629 So.2d 144 (1993)
Michael WALSH, Appellant,
v.
ARROW AIR, INC., Appellee.
No. 90-1846.
District Court of Appeal of Florida, Third District.
May 11, 1993.
On Motion for Rehearing December 7, 1993.
*145 Krupnick, Campbell, Malone and Roselli, and Walter G. Campbell, Jr., and Kelley B. Gelb, Fort Lauderdale, for appellant.
Thornton, David, Murray, Richard & Davis, and Barry L. Davis and Andrew L. Ellenberg, Miami, for appellee.
Before FERGUSON, JORGENSON and GERSTEN, JJ.

ON MOTION FOR REHEARING
FERGUSON, Judge.
The main issue in this appeal, from an order dismissing a complaint, is whether Walsh has a cause of action for wrongful discharge based on a public policy which protects employees who object to, or refuse to participate in, employment activities which violate a law, rule, or regulation. There is also a threshold choice of law issue, i.e., whether the "significant relationship" test compels the application of Florida law.
We affirm the trial court's finding that the case is governed by Florida law, but reverse the finding that no viable cause of action is alleged under Florida law.[1]

Facts of this Case
Michael Walsh, a Florida resident, was employed as a flight engineer by Arrow Air, a Florida corporation with its principal place of business in Dade County, Florida. On April 25, 1989, Walsh discovered a hydraulic leak in connection with Flight 506 scheduled for departure from John F. Kennedy Airport in New York.[2] He reported the leak to the flight's maintenance crew. Subsequently the crew reported that the leak had been checked and repaired. On a visual re-examination, *146 Walsh saw that proper repairs had not been made and that a dangerous leak still existed in the system. He reported the incident and, against the wishes of the employer, grounded the flight for approximately five hours while necessary repairs were performed.
Arrow Air, by and through its employees, threatened Walsh for his actions in reporting the incident and grounding the flight. Approximately three weeks later, Walsh was terminated from his employment with Arrow Air.[3] He commenced this action for wrongful termination.

Choice of Law
"The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties," Bishop v. Florida Specialty Paint, Co., 389 So.2d 999, 1001 (Fla. 1980), (citing Restatement (Second) of Conflict of Laws §§ 145-146 (1971)). Further, the court noted, the contacts to be taken into account in determining the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. Id. Both parties are Florida residents and the alleged tortious act occurred in Florida. We agree with the appellee that applying the factors from Bishop to the facts as alleged in the complaint, Florida has a more significant relationship to the case than New York, and that the law of this state should determine the outcome.

Common-Law Rule on Termination of At-Will Employees
Under the common-law rule, when a term of employment is for an indefinite period of time, either party may terminate the employment at any time, for any cause or no cause at all, without incurring liability. DeMarco v. Publix Super Markets, Inc., 384 So.2d 1253, 1254 (Fla. 1980). This employment-at-will doctrine harmonized with the laissez faire political and economic philosophy of the nineteenth century which was based on the belief that employers should be free to run their businesses without government interference. The rule was also consistent with the freedom of contract ideology prevalent during the nineteenth century. According to that doctrine, the freedom to make contracts included the freedom to terminate them unless the parties were bound for a specific period of time. Mark A. Redmiles, Shelter from the Storm: The Need for Wrongful Discharge Legislation in Alaska, 6 Alaska L.Rev. 321 (1989).
Although the rule gained wide acceptance in this country during that period, courts and lawmakers learned over the years that the mutuality of obligations rationale is based on a false premise of equal bargaining power between employees at-will and employers, and that the rule is inadequate to protect employees' interests. Andre D. Bouffard, Emerging Protection Against Retaliatory Discharge, 38 Me.L.Rev. 67 (1986); John E. Gardner, Federal Labor Law Preemption of State Wrongful Discharge Claims, 58 U.Cin. L.Rev. 491 (1989). Changed social values, as well as changes in modern employment relationships, have led to an erosion of the traditional rule. "A veritable avalanche of scholarly opinion has, with near unanimity, come down in favor of abolishing the at will rule." Note, Protecting Employees At Will Against Wrongful Discharge: The Public Policy Exception, 96 Harv.L.Rev. 1931 (1983). See generally Michael A. DiSabatino, Annotation, Modern Status of Rule that Employer May Discharge At Will Employee for any Reason, 12 A.L.R.4th 544 (1982).

Modern Trend
One commentator, in a 1986 law-review article, noted that all but nine states had abandoned the traditional rule regarding the termination of at-will employees  Florida, Colorado, Georgia, Iowa, Louisiana, Mississippi, *147 Rhode Island, Utah and Vermont. Michael G. Whelen, Unsuccessful Employee Arbitrants Bring Wrongful Discharge Claims, 35 Buff.L.Rev. 295 (Winter 1986) (citing H. Perritt, Employee Dismissal Law and Practice (1985)). Since publication of the 1986 study, several of the remaining nine states, including Florida, no longer adhere strictly to the common-law rule. Expressing disenchantment with the common-law rule, the Mississippi supreme court wrote in Shaw v. Burchfield, 481 So.2d 247 (1985), that under the appropriate factual situation, it would be inclined to re-address the at-will termination rule.
A public policy exception is frequently relied on by courts to circumvent the at-will rule where the results would be unconscionable. Redmiles, supra, at 322 (thirty-two states have adopted the public policy exception). It is premised on the rationale that while an at-will employee may be terminated for no reason, or for an arbitrary reason, an employee may not be terminated for an unlawful reason or one that is contrary to a clear mandate of public policy. Nina G. Stillman, Workplace Claims: Wrongful Discharge Public Policy Actions and Other Common Law Torts, 375 PLI/Lit 745 (June 1, 1989). The public policy exception does not displace the traditional at-will rule; it merely provides a mechanism for identifying certain legally recognized improper grounds for dismissal. Redmiles, supra, at 326.

Status of the Rule in Florida
Hartley v. Ocean Reef Club, Inc., 476 So.2d 1327, 1329 (Fla. 3d DCA 1985), involved an employee who was discharged for allegedly refusing to participate in his employer's violation of federal and state environmental statutes and regulations. He complained of a wrongful discharge. Dismissal of the complaint for failure to state a cause of action was affirmed. We resisted urgings to follow the modern trend on grounds that the public policy exception "is too vague a concept to justify the judicial creation of such a tort." Hartley, 476 So.2d at 1329. According to Hartley, choosing between competing public policies is a function best left to the legislature. Id.
A year after Hartley, the legislature enacted section 112.3187, the Whistle-blower's Act of 1986 which, among other things, prohibits the discharge of public employees or employees of independent contractors doing business with state agencies, in retaliation for reporting employer violations of laws that create a danger to the public's health, safety, or welfare.
In 1991, the Whistle-blower protection was expanded to cover private-sector employees who disclose, or threaten to disclose, employer violations of law, rule or regulation, or who object to, or refuse to participate in any activity, policy, or practice of the employer which is in violation of a law, rule or regulation. § 448.102, Fla. Stat. (1991).[4] Without question sections 112.321 and 448.102 have *148 modified the common law in Florida which permited private employers to terminate an at-will employee at any time, for any cause, or for no cause at all. Arrow Air argues, however, that section 448.102 is not applicable to this case because it post-dates the operative facts. As the final point we consider whether the statute, which was enacted while the case was pending on appeal, should be given retroactive application.

Retroactive Application
Although the general rule is that statutes creating new rights operate prospectively, Florida Dep't of Revenue v. Zuckerman-Vernon Corp., 354 So.2d 353 (Fla. 1977), the rule is not absolute. 2 Sutherland, Statutory Construction, § 41.01 (4th ed. 1986); 49 Fla.Jur.2d, Statutes, § 107 (1984). Whether the new statute controls the outcome of this case depends on legislative intent as clearly expressed or implied. Under Florida law an intent that a statute have application to cases pending will be presumed if the statute is remedial in nature. City of Orlando v. Desjardins, 493 So.2d 1027 (Fla. 1986). This final discussion examines the statute in light of the above principles.
A remedial statute is a legislative enactment that intends to afford a private remedy to a person injured by a wrongful act. It is designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good. Black's Law Dictionary 1292-93 (6th ed. 1990) (citing Application of City of New York, 71 Misc.2d 1019, 337 N.Y.S.2d 753 (N.Y. Sup. Ct. 1972); In re Estate of McCracken, 9 Ohio Misc. 195, 224 N.E.2d 181, 182 (Ohio Prob. 1967)). An examination of a statute in historical context is essential to a determination that it is remedial.
Several significant occurrences, mentioned earlier in this opinion, preceded passage of section 448.102. Workplace realities showed the at-will doctrine to be harshly unequal; an avalanche of criticism was heaped on the rule in treatises and case law from other jurisdictions; Florida laws which chipped away at the doctrine came close on the heels of cases which dismissed wrongful-termination cases as a matter for legislative intervention. Undoubtedly, the statute was enacted in response to those developments and with the intent to give a private remedy to employees who suffer discharge where their only transgression is disobedience to employer practices which violate laws enacted to protect the public safety and health.
In holding that a new Florida Public Records Act exemption was remedial and to be applied retroactively, the supreme court gave the statute a similar "contextual examination". City of Orlando v. Desjardins, 493 So.2d at 1028. It noted that there was "little doubt as to [the exemption's] salutary and protective purpose of mitigating the harsh provisions of the [Act] as applied to public entities' litigation files in ongoing litigation." Reasoning further, the court concluded that the legislature having now acted to correct the unbalanced posture and disadvantaged status of public entities, retroactive application of the law should not be denied on the technical ground that it is a substantive rather than a procedural law. Id. at 1029.
Applying similar reasoning, the Supreme Court of Florida recently held that section 112.3187, which created a civil cause of action for wrongful discharge of public employees, is a remedial statute. The court wrote in Martin County v. Edenfield, 609 So.2d 27, 29 (Fla. 1992), "we believe it clear that the Whistle Blower's Act is a remedial statute designed to encourage the elimination of public corruption by protecting public employees who `blow the whistle.' As a remedial act, the statute should be construed liberally in favor of granting access to the remedy."[5] *149 For the same reasons relied upon by the supreme court in construing the Florida Public Records Act and section 112.3187 as remedial statutes, we hold that section 448.102 applies to this case which was pending on appeal when the law became effective.
We have decided only the broad question whether a private employee has a cause of action for wrongful termination from an at-will employment in Florida. Still to be decided by the trial court is whether the complaint states, or can be amended to state, a cause of action within the statutory framework.
Reversed and remanded for further consistent proceedings.
JORGENSON, J., concurs.
GERSTEN, Judge (dissenting).
The majority opinion determines that: (1) Florida law applies, notwithstanding the fact that appellant sought relief under New York law; (2) although Florida law did not provide a cause of action for wrongful discharge at the time the complaint was filed or at the time of the appeal, a new Florida statute should be applied retroactively to this case; and (3) the cause should be remanded so that appellant may amend his complaint to include this new retroactive cause of action. Because of these determinations, I respectfully dissent.
The record reveals that at all trial court proceedings, appellant, who instituted this action, only sought to apply New York, and not Florida law. After the trial court dismissed the complaint, appellant filed a motion for rehearing which again stated that New York law applied.
Similarly, even on appeal, appellant's only point as stated in his initial brief, is:
The trial court erred in dismissing the plaintiff's complaint when on its face the complaint stated a cause of action under New York law.
Additionally, appellant's initial brief stated, "Appellant, MICHAEL WALSH, has never argued and does not argue now that such allegations state a cause of action for wrongful discharge under Florida law."
Yet, the majority reaches beyond appellant's issue. The majority concludes that the complaint, if amended, could now possibly state a cause of action under Florida law.
In considering a motion to dismiss for failure to state a cause of action, a trial court is limited to the four corners of the complaint. Edward L. Nezelek, Inc. v. Sunbeam Television Corporation, 413 So.2d 51 (Fla. 3d DCA), review denied, 424 So.2d 763 (Fla. 1982); Kaufman v. A-1 Bus Lines, Inc., 363 So.2d 61 (Fla. 3d DCA 1978). The trial court, adhering to this rule, found that appellant's complaint did not state a cause of action.
It is not this court's function to theorize or speculate causes of action a plaintiff may plead in a complaint. See Raney v. Jimmie Diesel Corporation, 362 So.2d 997, 998 (Fla. 3d DCA 1978); Thompson v. City of Jacksonville, 130 So.2d 105, 108 (Fla. 1st DCA 1961), cert. denied, 147 So.2d 530 (Fla. 1962). The burden of bringing a proper cause of action, alleging sufficient facts to overcome a motion to dismiss, lies with a plaintiff. Fla. R.Civ.P. 1.110(b). Neither the trial court, nor this court, can substitute its judgment for that of a plaintiff and his counsel, who decide how to frame a complaint. See Broward Marine, Inc. v. New England Marine Corporation of Delaware, 386 So.2d 70, 73 (Fla. 2d DCA 1980).
Even if the issue was properly presented and preserved for our review, the law is clear that appellant has not stated a cause of action under Florida law. Florida law holds that when the term of employment is discretionary with either party, then either party for any reason may terminate it at any time, without incurring liability. DeMarco v. Publix Super Markets, Inc., 384 So.2d 1253 (Fla. 1980).
The majority now erroneously concludes that section 448.102, Florida Statutes (1991), which was enacted after the original panel *150 decision in this case was released, should be applied retroactively. The complaint in this case was filed on November 17, 1989. The acts complained of occurred in April of 1989. The original opinion affirming the trial court's order was filed on May 21, 1991. The new whistle-blower's act did not take effect until June 7, 1991. Ch. 91-285, § 9, at 2750, Laws of Fla.
Retroactive application of the statute at this stage of the case turns the rule of statutory construction on its head. "It is a well-established rule of construction that in the absence of clear legislative expression to the contrary, a law is presumed to operate prospectively." Walker & LaBerge, Inc. v. Halligan, 344 So.2d 239 (Fla. 1977); Keystone Water Company, Inc. v. Bevis, 278 So.2d 606 (Fla. 1973); Larson v. Independent Life and Accident Insurance Co., 158 Fla. 623, 29 So.2d 448 (1947). There is no clear legislative expression that section 448.102, Florida Statutes (1991), was intended to apply retroactively. See Ch. 91-285, Laws of Fla.
The cases cited by the majority in support of retroactive statutory application do not apply to this case. Though City of Orlando v. Desjardins, 493 So.2d 1027 (Fla. 1986), held that a new Florida Public Records Act exemption (section 119.07, Florida Statutes (1985)) was remedial and to be applied retroactively, Desjardins is a factually different case. It deals with a different and wholly unrelated statute, and thus has no bearing on this case.
Similarly, the majority's reliance on Martin County v. Edenfield, 609 So.2d 27 (Fla. 1992), is also misplaced. Martin County dealt with section 112.3187, Florida Statutes, a government employee's whistle-blower's act. Most importantly, Martin County does not address the issue of retroactivity.
Acts which create new obligations and impose new penalties, are rigidly construed and operate prospectively only. Larson v. Independent Life & Accident Ins. Co., 29 So.2d 448. Section 448.102, Florida Statutes (1991), creates new obligations on the part of employers, and should be rigidly construed as applying prospectively. Moreover, the legislature expressed its intent to prospectively apply section 448.102, Florida Statutes:
"This act shall take effect upon becoming law." Ch. 91-285, § 9, at 2750, Laws of Fla.
In conclusion, appellant never sought to apply Florida law, and because Florida law did not provide a remedy for the acts complained of, and because the new whistle-blower's act is not to be applied retroactively, I respectfully dissent.

ON MOTION FOR REHEARING
PER CURIAM.
Arrow Air's principal contention in the motion for rehearing is that application of the new statute to give the plaintiff a cause of action for wrongful termination violates the rule against the retroactive application of new statutes. Stated otherwise, it seems the employer's argument is that before the enactment of section 448.102, Arrow Air had a right to fire its employees for complying with the law against its wishes, without fear of civil liability, and in that sense the new statute impairs a substantive right while imposing a new duty on the employer.
First, the underlying obligation of a common carrier to use care in the conduct and management of its conveyances, which might include maintenance, is not new, but is codified in a twenty-two year old criminal statute, section 860.02 Florida Statutes. See original opinion, n. 4 (May 11, 1993). Second, the power of an employer to terminate an employee for doing that which the law requires, or for any reason clearly contrary to a strong public policy, which may have existed prior to the exactment of section 448.102, is not a substantive right based on any concept of justice, ethical correctness, or principles of morals. See Black's Law Dictionary 1223 (6th ed. 1992). In the words of Justice Holmes:
All rights tend to declare themselves absolute to their logical extreme. Yet all in fact are limited by the neighborhood of principles of policy which are other than those on which the particular right is founded, and which become strong enough to hold their own when a certain point is reached.
*151 Hudson County Water Co. v. McCarter, 209 U.S. 349, 355, 28 S.Ct. 529, 531, 52 L.Ed. 828 (1908); see also State Dep't of Transp. v. Knowles, 402 So.2d 1155, 1158 (Fla. 1981) (the rule against retroactive application of statutes is not absolute; the test requires a balancing of the public interest to be advanced by the legislation against the importance of any private right abrogated). We are not persuaded that there is a constitutional impediment to giving the remedial statute retroactive application.
Rehearing is denied.
FERGUSON and JORGENSON, JJ., concur.
GERSTEN, J., dissents.
NOTES
[1] In response to the first point in the dissent we note that although Walsh contended in the trial court that New York law governed, Arrow Air argued, correctly, that Florida law applied. As the case was postured the trial court was obligated to choose between the law of New York and the law of Florida.

In our original panel opinion we observed, unanimously, that "[a]t issue is whether appellant's complaint sets forth sufficient allegations to allow the application of New York law under Florida's choice of law principles." We held, in affirming a dismissal of the complaint, that "the facts indicate more significant contacts with Florida than with New York", and that "Florida law does not recognize a cause of action for wrongful discharge."
Arrow Air filed a supplemental brief in response to our request which, again, makes no suggestion that the trial court went beyond the question presented in deciding that Florida law applied. Instead it is conceded by Arrow Air that "this court was correct in affirming" the trial court's determination that Florida law applied. The appellee agrees that the issues on rehearing are whether the new Florida statute should be given retroactive application, and if so, whether a cause of action is stated under the new statute.
[2] We chronicled a history of faulty maintenance practices by Arrow Air, including flying an aircraft with a leaking hydraulic system, in reversing a summary judgment for the airline on a wrongful death claim brought by the widow of a copilot. Connelly v. Arrow Air, 568 So.2d 448 (Fla. 3d DCA 1990), rev. denied, 581 So.2d 1307 (Fla. 1991).
[3] The material facts are taken from the complaint and must be accepted as true for the purpose of a motion to dismiss for failure to state a cause of action. Singer v. Florida Paving Co., 459 So.2d 1146 (Fla. 3d DCA 1984).
[4] Section 448.102 provides:

Prohibitions.  An employer may not take any retaliatory personnel action against an employee because the employee has:
(1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy or practice.
(2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.
(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.
In defining terms used in the chapter, section 448.101(4), provides that any law, rule, or regulation under section 448.102 "includes any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business."
Among other statutes or regulations, Arrow Air's actions may have violated is chapter 860, which governs offenses concerning aircraft and other public conveyances, and provides a criminal penalty for "whoever, having management or control over ... [a] public conveyance used for the common carriage of passengers is guilty of gross carelessness or neglect in or in relation to the conduct, management and control of such conveyance." § 860.02, Fla. Stat. (1991).
[5] Martin County v. Edenfield, 609 So.2d 27 (Fla. 1992), as the dissent notes, does not deal extensively with the subject of retroactive application of new statutes. The case does hold, however, that the government employees' whistle-blower's act is remedial. Six years earlier, in Orlando v. Desjardins, 493 So.2d 1027 (Fla. 1986), the court held that "[i]f a statute is found remedial in nature, it can and should be retroactively applied in order to serve its intended purpose. Id. at 1028.

The rule is otherwise, assuredly, where the legislature expressly limits the application of a new law. See Boynton v. Burglass, 590 So.2d 446 (Fla. 3d DCA 1991) (en banc). That was the case with section 455.2415, Florida Statutes (1988), discussed in Boynton, which provides confidentiality in communications between a patient and a psychiatrist. In drafting the law the legislature added that it "does not apply to causes of action arising prior to the effective date of this act." Ch. 88-1, § 86, at 186, Laws of Fla.