643 So.2d 1109 (1994)
Pamela FORRESTER, Appellant,
v.
JOHN H. PHIPPS, INC., d/b/a WCTV  Channel 6 Television, Appellee.
No. 93-1539.
District Court of Appeal of Florida, First District.
September 7, 1994.
Rehearing Denied November 2, 1994.
M. Stephen Turner, P.A. of Broad and Cassel, Tallahassee, for appellant.
Michael P. Bist of Gardner, Shelfer, Duggar & Bist, P.A., Tallahassee, for appellee.
SMITH, Senior Judge.
Appellant filed an amended complaint seeking damages under section 448.102(3), Florida Statues (1991). In her amended complaint, appellant alleged that the appellee, a television station operating in Leon County, falsely advised the local newspaper, the Tallahassee Democrat, concerning the reasons why appellant had been reassigned in her duties. Appellant, when asked by the newspaper to comment on the reassignment, stated that she could not support the television station's version of events. Appellant alleges further that because she did not defer to the television station's false statements, she was subjected to retaliatory personnel action by her employer. Specifically, appellant alleges that she was suspended for three work days for refusing to retract her statements to the newspaper, and that she was expressly forbidden to discuss the disciplinary action, or the reason for it, in any public forum. Appellant alleges that she was advised that failure to adhere to these directions would result in further disciplinary action. A written report was placed in appellant's personnel file. During the suspension, appellant alleges, she sought the advice of counsel, and thereafter notified the appellee in writing that the disciplinary action taken against her was wrongful. She requested that appellee withdraw the adverse personnel report from her file, apologize for improper treatment, allow her to advise colleagues and the public as to the true nature of the situation, and to refrain from further retaliatory action.
Upon her return to work after the suspension, appellant was again suspended without *1110 pay for one week. The reason given for the second suspension was, according to appellant, that she had been absent from the station the previous day without permission. Appellant alleges that she had made prior arrangements to take a vacation day.
Following her return to work at the completion of the second suspension, a personnel evaluation was released which rated the appellant as conditional or unsatisfactory in all categories. Appellant alleges that she was assigned a weekend work schedule which amounted to very little actual work. Appellant thereafter filed a complaint, which was followed by, according to the appellant, an indefinite suspension.
As noted, by her amended complaint appellant seeks damages, a declaration that appellant was wrongfully discharged, removal of all improper disciplinary matters from her personnel file, and an injunction against the appellee and its employees prohibiting communication of any adverse information regarding the appellant. As for her claim for damages, appellant seeks lost wages, benefits and other renumeration for past and future employment, with interest, as well as compensatory damages for embarrassment, emotional distress and loss of personal reputation. Finally, appellant seeks attorney fees, court costs and other related expenses.
A motion to dismiss was filed by appellee on the ground that appellant did not state a cause of action under sections 448.101-105. Further pleadings on the matter were submitted, and after a hearing on the motion to dismiss, the lower court entered an order dismissing the complaint and dismissing the cause with prejudice. In the order, the lower court stated that while it found appellant's arguments to be "compelling," the court found that the arguments carried the statute beyond its intended scope. The lower court viewed section 448.101-105 to be a type of "whistle-blower" act concerning violations of law specifically regulating an employer's particular type of business. Because it appeared to the lower court that the appellant would be unable to plead a cause of action under the statute, her claim was dismissed with prejudice.
On appeal, appellant argues that sections 448.101-105, Florida Statutes (1991), modify the "at-will" doctrine which theretofore allowed discharge of an employee regardless of good cause. According to appellant, the amended statutory law prohibits an employer from discharging an employee who refuses to participate in the violation of "any law, rule or regulation." Appellant construes the phrase any law, rule or regulation as including matters of public policy, such as the public policy against signing or agreeing to false statements, and the public policy against slander. Appellee, taking a more narrow view of the statutory scheme, argues that section 448.102(3), when read in conjunction with the definition of "law, rule or regulation" found in section 448.101(4)[1] only precludes an employer from discharging an employee who refuses to participate in the violation of any law, rule or regulation which pertains to the particular industry or business in which the employer is engaged. We are not in total agreement with either party.
There is a paucity of case law construing this statute since its amendment in 1991. In Walsh v. Arrow Air, 629 So.2d 144 (Fla. 3d DCA 1993), the court reversed an order which dismissed a complaint seeking damages under section 448.102. In Walsh, a flight engineer employed by Arrow Air was discharged after he grounded a flight and made a report of a hydraulic leak in an airplane; the leak had been previously noted by Walsh but was not properly repaired. After Walsh reported the incident and grounded the flight, Arrow Air allegedly threatened him. Three weeks later, Walsh was terminated. At issue in Walsh was whether Florida law was controlling and whether section 448.102 could be applied retroactively. The alleged retaliatory action taken against Walsh occurred prior to the enactment of the 1991 version of the statute. Finding the statute to be remedial in nature, *1111 the district court held that it could be applied retroactively, and remanded to the trial court to determine whether, under the facts alleged, a cause of action under the statute was stated.
On motion for rehearing the appellee in Arrow Air, in advancing its argument against retroactive application, stated that prior to the enactment of section 448.102, Arrow Air had the right to fire its employees for complying with the law against its wishes, without fear of civil liability, and that, in a sense, the new statute impairs a substantive right while imposing a new duty on the employer. In rejecting this argument, the court noted that the obligation of a common carrier to use care in its management and maintenance is codified in a 22 year old criminal statute. The court noted further that "the power of an employer to terminate an employee for doing that which the law requires, or for any reason clearly contrary to a strong public policy, which may have existed prior to the enactment of section 448.102, is not a substantive right based upon any concept of justice, ethical correctness, or principles of morals." 629 So.2d at 150.
In Schroeder v. Crowley Maritime Corp., 825 F. Supp. 1007 (S.D.Fla. 1993), the federal court determined that section 448.101 et al. is not preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. As Schroeder is concerned primarily with the question of preemption, it is of little assistance in the instant case because the preemption principle is not at issue before us.
We are not inclined to agree with the appellee that the statutory scheme in question precludes the discharge of employees who refuse to participate in the violation of a law, rule or regulation pertaining only to the business engaged in by the employer.[2] Had the legislature intended to narrow section 448.102 in such a manner, it obviously could have done so. However, section 448.102 speaks in broader terms:
An employer may not take any retaliatory personnel action against an employee because the employee has:
(1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of the supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.
(2) Provided information to, or testified before, any appropriate governmental agency, person or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, regulation by the employer.
(3) Objected to, or refuse to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule or regulation.
We think the language of the statute is clear, and that appellee's more restrictive interpretation is not what the legislature intended. As noted above, appellant takes a more expansive view of this statutory scheme, and argues that because of the use of the term "includes" in section 448.101(4),[3] the legislature did not intend the definition stated to be exclusive. Therefore, according to appellant, section 448.102(3) should be interpreted to include matters of public policy, and should protect her against retaliation for publicly challenging her employer's veracity.
While one may be sympathetic to appellant's notion that her dispute with her employer implicates matters of public policy, and that public policy should be preserved by application of this statute, we cannot agree that the legislature intended such a broad approach. We are confident that the legislature did not intend to create a cause of action for what essentially amounts to an internal *1112 and personal dispute between appellant and her employers. By the definition provided in section 448.101(4), the phrase "law, rule or regulation" refers to enactments of a legislative or administrative forum. This limitation to "adopted" material only appears deliberate, and well-serves the public by hinging civil liability upon matters of which due notice, actual or imputed, has been conveyed. Public policy is a protean thing, and provides at best, a shaky foundation for imposing civil liability. Justice Terrell once observed, "public policy was described as a very unruly horse, and, when once you get astride it, you never know where it will carry you." Story v. First National Bank & Trust Co., 115 Fla. 436, 156 So. 101, 103 (1934), citing, Richardson v. Melish, 2 Bing. 229, text 252, 9 E.C.L. 557.
Because we cannot agree that "public policy" issues such as those complained of by appellant fall within the ambit of section 448.101(4), and because appellant offers no other solid basis for establishing a cause of action under section 448.102, we affirm the dismissal of her complaint with prejudice.
AFFIRMED.
BARFIELD and LAWRENCE, JJ., concur.
NOTES
[1] Section 448.101, "Definitions," subsection (4) reads as follows:

(4) "Law, rule, or regulation" includes any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business.
[2] Given the placement of commas in section 448.101(4), we view the phrase "pertaining to the business" as modifying only a "local statute or ordinance." Needless to say however, many statutes or regulations, federal or otherwise, are in fact industry-specific. Thus, what is lawful conduct for an iron works may be unlawful conduct when committed by a food processing company.
[3] Footnote 1, supra.