# Third District Court of Appeal

## State of Florida

Opinion filed October 20, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1213
Lower Tribunal No. 19-8314
_____

**Terry R. Henley,**
Appellant,

vs.

**City of North Miami,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Spencer Eig, Judge.

The Amlong Firm, and Karen Coolman Amlong (Fort Lauderdale), for appellant.

Weiss Serota Helfman Cole & Bierman, P.L., and Edward G. Guedes, for appellee.

Before LOGUE, LINDSEY, and HENDON, JJ.

HENDON, J.

Terry R. Henley ("Henley") appeals from an order granting the City of North Miami's ("City") motion to dismiss his third amended complaint with prejudice for failure to state a cause of action under Florida's Whistle-Blower's Act, section 112.3187, Florida Statutes ("Whistle-blower's Act" or "Act"). As the trial court properly concluded that Henley's alleged disclosures did not constitute protected disclosures under the Whistle-blower's Act, we affirm.

## I. Facts and Procedural History

Henley filed a lawsuit against the City pursuant to the Whistle-blower's Act. In his third amended complaint ("operative complaint"), Henley alleged that in September 2018, the City terminated his employment as Acting Budget Director in retaliation for emails and a text message he sent to City Manager Larry Spring and Deputy City Manager Arthur Sorey III, relating to the City's budget and financial projections. Henley did not attach the alleged e-mails and text message to the operative complaint, but summarized them in Paragraph 7 of the operative complaint.

The City moved to dismiss the operative complaint with prejudice. Following a hearing, the trial court entered an order granting the City's motion. Henley's appeal followed.

## II. Standard of Review

A trial court's determination as to whether a complaint states a cause of action is reviewed de novo. See People's Tr. Ins. Co. v. Alonzo-Pombo, 307 So. 3d 840, 842 (Fla. 3d DCA 2020); Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc., 842 So. 2d 204, 206 (Fla. 3d DCA 2003) ("Because a ruling on a motion to dismiss for failure to state a cause of action is an issue of law, it is reviewable on appeal by the de novo standard of review.").

## III. Analysis

"The legislative intent of the Whistle-blower's Act is to prevent retaliatory action against employees who disclose misconduct on the part of public officials." State, Dep't of Transp. v. Fla. Comm'n on Human Rels., 842 So. 2d 253, 256 (Fla. 1st DCA 2003); see also Shaw v. Town of Lake Clarke Shores, 174 So. 3d 444, 445 (Fla. 4th DCA 2015) (citing § 112.3187(2), Fla. Stat. (2011))[1]. The Whistle-blower's Act "is a remedial

---

[1] Section 112.3187(2) currently provides in relevant part as follows:

> LEGISLATIVE INTENT.—It is the intent of the Legislature to prevent agencies . . . from taking retaliatory action against an employee who reports to an appropriate agency violations of law on the part of a public employer . . . that create a substantial and specific danger to the public's health, safety, or welfare. It is further the intent of the Legislature to prevent agencies . . . from taking retaliatory action against any person who discloses information to an appropriate agency alleging improper use of governmental office, gross waste of funds, or

3

statute designed to encourage the elimination of public corruption by protecting public employees who 'blow the whistle.'" <u>Martin Cnty. v. Edenfield</u>, 609 So. 2d 27, 29 (Fla. 1992). As the Act is a remedial statute, it should be liberally construed "in favor of granting access to the remedy." <u>Id.</u>; <u>see also</u> <u>Irven v. Dep't of Health & Rehab. Servs.</u>, 790 So. 2d 403, 405 (Fla. 2001) ("[T]he Act is remedial and should be given a liberal construction.").

"To overcome a motion to dismiss for failure to state a cause of action with a retaliation claim under the Act, the complaint must include sufficient facts to allege: (1) the plaintiff engaged in a protected activity (i.e. a protected disclosure); (2) the plaintiff suffered an adverse employment action; and (3) the two events are not wholly unrelated." <u>Shaw</u>, 174 So. 3d at 445-46 (quoting <u>Fla. Dep't of Child. & Fams. v. Shapiro</u>, 68 So. 3d 298, 305-06 (Fla. 4th DCA 2011)). In addition, section 112.3187(5) provides:

> (5) NATURE OF INFORMATION DISCLOSED.—The information disclosed under this section must include:
> (a) Any violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor which creates and presents a substantial and specific danger to the public's health, safety, or welfare.
> (b) Any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds,

> any other abuse or gross neglect of duty on the part of an agency, public officer, or employee.

4

> suspected or actual Medicaid fraud or abuse, or gross neglect of duty committed by an employee or agent of an agency or independent contractor.

As Henley's alleged disclosures involved a "local governmental entity," "the information must be disclosed to a chief executive officer as defined in s. 447.203(9) or other appropriate local official." § 112.3187(6). As relevant here, the protected disclosure requires an employee's "written and signed complaint." § 112.3187(7); see also Walker v. Fla. Dep't of Veterans' Affs., 925 So. 2d 1149, 1150 (Fla. 4th DCA 2006) ("The purpose of the statutory requirement of a signed writing 'is to document what the employee disclosed, and to whom the employee disclosed it, thus avoiding problems of proof for purposes of the Whistle-blower Act.'") (quoting Hutchison v. Prudential Ins. Co. of Am., Inc., 645 So. 2d 1047, 1050 (Fla. 3d DCA 1994)).

In arguing that his alleged disclosures are protected under the Whistle-blower's Act, Henley relies primarily on this Court's decision in Igwe v. City of Miami, 208 So. 3d 150 (Fla. 3d DCA 2016). Igwe filed a retaliatory discharge claim against the City of Miami under the Whistle-blower's Act, alleging he was terminated as a result of protected disclosures. Igwe was the Independent Auditor General ("IAG") for the City of Miami. As the IAG, Igwe had the duty to report his financial analysis to

the City of Miami Commission.  Id.  As summarized in Igwe,

> Igwe disclosed to the City Commission and the City's Mayor several instances of alleged misconduct between 2009 and 2011, including the following: (1) a report finding that the City had violated its financial integrity principles by engaging in improper interfund borrowing; (2) a report identifying the improper transfer of restricted Local Option Fuel Tax revenues into the City's general fund; (3) a report identifying another improper transfer of restricted stormwater utility revenues into the City's general fund; and (4) a report that the City was continuing to improperly transfer restricted revenues into the City's general fund, even after the issuance of the prior reports. Igwe also issued a report to the City Commission and the City's Audit Advisory Committee, disclosing that the City Attorney had overpaid herself.

Igwe, 208 So. 3d at 151-52.  In addition, Igwe was subpoenaed by the United States Securities and Exchange Commission ("SEC") during an investigation being conducted by the SEC and the Federal Bureau of Investigation ("FBI"), relating to the City of Miami's potential securities law violations.  The disclosures Igwe made were in accordance with his job duties as the City of Miami's IAG.  Id. at 152.

The City of Miami moved for summary judgment, arguing that the Whistle-blower's Act only applies to those who make voluntary disclosures, and because Igwe's disclosures were made as part of his job duties as IAG, he was not protected by the Whistle-blower's Act.  Id.  The trial court agreed with the City of Miami's position, finding that Igwe's disclosures were not protected under the Whistle-blower's Act, and entered final

6

summary judgment in favor of the City. In doing so, the trial court found that Igwe's disclosures were not voluntary because his disclosure's consisted of "things that the job obligated him to report," and his cooperation with the SEC and FBI were also part of his duties as IAG. Id.

This Court reversed the order entering final summary judgment in favor of the City of Miami, concluding Igwe was a protected person under the Whistle-blower's Act. This Court recognized that under section 112.3187(7), there are five independent categories of protected persons, and that Igwe is a protected person under two of the categories. First, his disclosures to the City of Miami Commission fell under the category of "employees who file any written complaint to their supervisory officials," and second, his disclosures to the SEC fell under the category of persons 'who are requested to participate in an investigation, hearing, or other inquiry conducted by any agency or federal government entity." Id. at 155 (quoting § 112.3187(7)). This Court concluded that "section 112.3187(7) protects those who make disclosures regarding 'improper use of governmental office, gross waste of funds, or any other abuse or gross neglect of duty on the party of any agency, public officer, or employee,' even if they do so in the course of carrying out their job duties." Id. at 156.

The issue addressed in Igwe is not at issue in the instant case. The

City has not argued that that Henley does not fall under one of the categories of "employees and persons protected" under the Whistle-blower's Act. The City does not argue that because the alleged e-mails concern matters within Henley's job description as the City's Acting Budget Director, he is not protected under the Whistle-blower's Act. Rather, the issue is whether Henley's alleged disclosures themselves—the emails and the text message—constitute protected disclosures under the Whistle-blower's Act. As stated above, Henley did not attach the e-mails to the operative complaint. Instead, Henley summarized the alleged e-mails and text message in paragraph 7 of the operative complaint.

Paragraph 7 reflects that Henley allegedly sent e-mails and a text message to the City Manager and/or the Deputy City Manager relating to deficits in the proposed budget, with Henley recommending certain cuts in the proposed budget to avoid the deficit. For example, Henley described these communications as "projections of deficit" and "Plan to Balance." The alleged e-mails and the text message, as described by Henley, do not identify any violation of law or any act of suspected gross mismanagement, misfeasance, etc. Thus, Henley's written disclosures do not constitute protected activity under the Whistle-blower's Act. See § 112.3187(5)(a)-(b); see also Pickford v. Taylor Cnty. Sch. Dist., 298 So. 3d 707 (Fla. 1st

8

DCA 2020) (holding that a former substitute teacher's letter to an elementary school principal disputing his pay rate was not a protected disclosure under the Whistle-blower's Act where the letter failed to identify any violation of law, rule, or policy that would present a substantial and specific danger to the public's health, safety, or welfare, nor did it identify any act of misfeasance, malfeasance, or other gross conduct that would have triggered the Act's protections); Castro v. Sch. Bd. of Manatee Cnty., Fla., 903 F. Supp. 2d 1290 (M.D. Fla. 2012) (holding that complaints by employee about school board's implementation of state educational policies regarding student evaluations did not constitute protected activity under the Whistle-blower's Act because the complaints did not involve complaints about school board's violations of the law, and did not indicate that there was any risk to public health, safety, or welfare, and the complaints occurred after supervisor had already decided to terminate employee).

As stated above, under section 112.3187(7), the protected disclosure(s) must be in the form of a signed writing. See Walker, 925 So. 2d at 1150 ("The purpose of the statutory requirement of a signed writing 'is to document what the employee disclosed, and to whom the employee disclosed it, thus avoiding problems of proof for purposes of the Whistle-

9

blower Act.'") (quoting <u>Hutchinson v. Prudential Ins. Co. of Am., Inc.</u>, 645 So. 2d 1047, 1050 (Fla. 3d DCA 1994)).  Rather than summarizing only the written disclosures, Henley also included in Paragraph 7 alleged non-written disclosures, which can be described as instructions, reactions, admonishments, arguments, and discussions. These alleged non-written disclosures cannot be considered when determining whether Henley engaged in protected activity.[2]  <u>See</u> <u>Walker</u>, 925 So. 2d at 1150.

## IV. Conclusion

Accordingly, based on the above analysis we affirm the order dismissing the operative complaint with prejudice.

Affirmed.

---

[2] Henley's operative complaint also refers to an outside auditor's report issued following Henley's termination.  The auditor's report cannot be considered because the report is not a disclosure made by Henley and because the report was issued following Henley's termination.

10